WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Apollo Group Inc. Securities Litigation, | Master File No. CV 04-2147-PHX-JAT |
| | CV 04-2204-PHX-JAT (Consolidated)<br>CV 04-2334-PHX-JAT (Consolidated) |
| | CLASS ACTION |
| This Document Relates To: All Actions | **FINAL APPROVAL ORDER AND JUDGMENT** |

Pending before the Court are: (1) Plaintiffs' Motion for Approval of Stipulation and Agreement (Doc. 739), (2) Plaintiff's Stipulation and Agreement regarding Final Approval Order and Judgment (Doc. 730), (3) Plaintiffs' Motion for Attorneys' Fees (Doc. 740), and (4) Defendants' Unopposed Motion to Vacate Judgment (Doc. 747).  Pursuant to Federal Rules of Civil Procedure 23(e), a hearing was held on April 16, 2012 at 10:00 a.m.  The Court now rules on the Motions.

I.   **BACKGROUND**

This is a consolidated class action proceeding, wherein lead Plaintiff, on behalf of a class of persons who purchased Apollo common stock between February 27, 2004 and September 14, 2004, alleged that Defendants violated section 10(b) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10(b)-5. On January 16, 2008, a jury verdict was entered in favor of lead Plaintiff.  (Doc. 490).  On August 4, 2008, this Court granted Defendants' motion for judgment as a matter of law and entered

1   judgment in favor of Defendants.  (Doc. 560).

2       On June 23, 2010, the Ninth Circuit Court of Appeals reversed the judgment in favor

3   of Defendants and remanded with instructions that this Court enter judgment in accordance

4   with the jury's verdict.  (Doc. 679-1).  On April 6, 2011, this Court entered that judgment.

5   (Doc. 695).  The Parties then engaged in mediation in an attempt to resolve outstanding

6   disputes regarding claims administration procedures.  As a result of this mediation, the

7   Parties ultimately agreed to a settlement.

8       This matter came before the Court for hearing pursuant to its November 29, 2011

9   Preliminary Approval Order (Doc. 737) on the application of the Parties pursuant to Rule

10  23(e) of the Federal Rules of Civil Procedure for final approval of the class settlement recited

11  in the Stipulation and Agreement (Doc. 729).

## II.   THE MOTION FOR FINAL APPROVAL OF STIPULATION AND AGREEMENT (Docs. 739 & 730).

### A.   Legal Standard

Rule 23(e) provides that a class action shall not be dismissed or compromised without court approval following "a hearing and on finding that the [the compromise] is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e). The Ninth Circuit Court of Appeals has articulated several factors relevant to the evaluation of the fairness of a class action settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2011).  As this Court concluded in its Preliminary Approval Order, these factors favor a finding of fairness, reasonableness, and adequacy, and demonstrate that the settlement recited in the Settlement Agreement falls within the range of settlements qualified for judicial approval and is in the best interests of the Settlement Class.

####    1.   The Strength of Plaintiffs' Case, the Risk of Continued Litigation, the Risk of Maintaining Class Action Status, and

1          **the Complexity, Expense, and Duration of the Litigation**

2          This case differs from a typical class action settlement because this case has already

3  proceeded through trial and appeal and the sole outstanding disputes relate to claims

4  administration procedures.  The settlement contemplates, among other things, quantifying,

5  for all Class Members, on an aggregate basis, the per share damages determined in the

6  Judgment and the calculation and allocation of recognized claimant recovery.  The parties

7  reached this settlement as the result of a mediation conducted by Retired Judge Nicholas

8  Politan.  The settlement allows the Parties to avoid further delays in a lawsuit that has been

9  pending since 2004.

10          The Court finds that the terms of the settlement are fair and reasonable and there is

11  substantial uncertainty that future litigation regarding these terms would result in a more

12  favorable settlement for Plaintiffs.  By comparison, the terms agreed to by the Parties provide

13  certainty with regard to the relief the Class Members will obtain.  These considerations

14  therefore favor granting final settlement approval.  *See, e.g., Nat'l Rural Telecomms. Coop*

15  *v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("unless the settlement is clearly

16  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

17  with uncertain results.").

18                    **2.      The Consideration Offered in the Settlement**

19          To determine if the amount offered in settlement is fair, "[i]t is the complete package

20  taken as a whole, rather than the individual component parts, that must be examined for

21  overall fairness."  *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 628 (9th Cir.

22  1982).  In this case, the jury determined an amount that it felt each share was worth and the

23  Parties have agreed to a quantification of those shares on an aggregate basis.  Accordingly,

24  the relief provided by the Parties' settlement is substantial and supports final settlement

25  approval.

26                    **3.      The Stage of the Proceedings, and Experience and Views of
                            Counsel.**

27

28          There is no question that the Parties have a full understanding of the legal and factual

issues surrounding this case. The Parties have proceeded through a full jury trial, an appeal to the Ninth Circuit Court of Appeals and petitioned for a writ of certiorari to the United States Supreme Court. Thereafter, the Parties engaged in a mediation, wherein they were able to reach a settlement regarding the terms of the settlement. There is no evidence that there has been anything other than a genuine arms-length negotiation in this case.

Further, Class Counsel has been involved in this case since 2004 and is familiar with all of the issues in this case.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.

*Nat'l Rural*, 221 F.R.D. at 528 (internal quotations and citations omitted). Class Counsel have demonstrated a high degree of competence in the eight years of litigation of this case and have represented to the Court that the settlement is a fair, adequate, and a reasonable resolution of the Class's dispute with Defendants and is preferable to continued litigation.

### 4.  The Reaction of the Class to the Proposed Settlement

In assessing whether to grant approval of a settlement, courts consider the reactions of the members of the class, particularly the class representatives. *Nat'l Rural*, 221 F.R.D. at 528 (citing 5 MOORE'S FEDERAL PRACTICE, § 23.85(d)(d) (Matthew Bender 3d ed.)). The Class Representatives, who have a substantial understanding and experience with this action and the settlement, have voiced their support for the settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*, F.R.D. at 529. Here, more than 166,000 Notices of the Settlement Agreement were mailed to potential Class Members, brokerage firms, and other institutions and the court-approved Summary Notice was published in *Investor's Business Daily*. Under the circumstances, the Parties' notice plan constituted the best notice

practicable, adequately informed the Class Members regarding the terms of the proposed settlement, including their rights to exclude themselves or opt-out and by when, and fully satisfied the requirements of Rule 23, the requirements of due process, and any other applicable law. This Notice included clear instructions about how to object to the Proposed Settlement if the Class Members opposed final approval of the Proposed Settlement. There have been no objections from Class Members or potential class members, which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate. *See id.* at 529.

Based on the foregoing, and due and adequate notice having been given of the settlement as required in the Preliminary Approval Order, and the Court having considered all papers filed and proceedings held and otherwise being fully informed and good cause appearing:

**IT IS ORDERED** granting the Parties' Joint Motion for Final Approval of the Class Action Settlement and Entry of Final Judgment and Order of Dismissal. (Doc. 739).

**IT IS FURTHER ORDERED** granting Plaintiff's Stipulation and Agreement regarding Final Approval Order and Judgment (Doc. 730) as follows:.

Unless otherwise indicated, all terms used herein shall have the same meanings as those terms have in the Stipulation (Doc. 730).

This Court finds that due and adequate notice was given of the Judgment entered on April 6, 2011 (Doc. 695) in the above matter, and of the Stipulation, and Class Counsel's application for an award of attorneys' fees and reimbursement of expenses as directed by this Court's Preliminary Approval Order, and that the forms and methods for providing such notice to Class Members constituted the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort, and satisfied all of the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable laws.

This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.  As set forth in the Judgment entered April 6, 2011 (Doc. 695), the Class consists of all persons and entities who, during the period of February 27, 2004 through and including September 14, 2004 ("the Class Period"), purchased the securities of the Apollo Group, Inc. ("Apollo") on the open market, and held those shares through September 21, 2004.  Excluded from the Class are the Defendants, any entity in which Defendants or any excluded person has or had a controlling ownership interest, the officers and directors of Apollo, members of their immediate families, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.  The Class also excludes those Persons who timely and validly requested exclusion from the Class pursuant to the Notice sent to Class Members as provided in this Court's Class Certification Order of August 28, 2007 (Doc. 275), who are listed in Exhibit A hereto.  This Court's Class Certification Order of August 28, 2007 is reaffirmed and adopted herein as Final.

The Court finds that all the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all Members of the Class was and is impracticable; (b) there were and are questions of law and fact common to each Member of the Class; (c) the claims of the Lead Plaintiff were and are typical of the claims of the Class it has represented; (d) the Lead Plaintiff has fairly and adequately represented the interests of the Class; (e) the questions of law and fact common to the Members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class Counsel have fairly and adequately protected the interests of the Class at all times throughout this action.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court hereby approves the Stipulation (Doc. 730) and finds that it is, in all respects, fair, reasonable, and adequate to, and is in the best interests of, Lead Plaintiff and each of the Class Members.

Upon the Effective Date, Lead Plaintiff and each of the Class Members (except those persons and/or entities identified in Exhibit A attached hereto who previously validly and timely requested exclusion from the Class), shall be deemed to have, and by operation of this Final Approval Order and Stipulation shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties as provided in the Stipulation, and the Action, including all claims contained therein, are hereby dismissed with prejudice as to Lead Plaintiff and all Class Members.

Upon the Effective Date, all Class Members shall be forever barred and enjoined from bringing or instituting, directly or indirectly, any claim, suit or cause of action of any kind whatsoever against Lead Plaintiff or Class Counsel, or their officers, directors, trustees, agents, experts, consultants, partners, or employees, concerning, arising from or in connection with the Stipulation or its fairness, adequacy or reasonableness.

The Court finds that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

This Court hereby approves the Claims Allocation, Administration and Procedures ("Plan") as set forth in the Stipulation and Notice, and directs Lead Counsel and the Claims Administrator, Heffler, Radetich & Saitta LLP, to proceed with the processing of Proofs of Claim and the administration of the Claims pursuant to the terms of the Plan and, upon completion of the claims processing procedure, to present to this Court a proposed final distribution order for the distribution of the Net Common Fund to Authorized Claimant Class Members with respect to their eligible shares purchased during the Class Period and held through September 21, 2004, as determined by the Claims Administrator, as provided in the Stipulation.

In the event that the Stipulation does not become Final in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Common Fund, or any portion thereof, is returned to the Defendants, then this Final Approval Order shall be rendered null and void to the extent provided by and in accordance with the

Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation and each party shall be restored to his, her or its respective position as it existed immediately before execution of the Stipulation, including all monies paid into the Common Fund by Defendants being returned to Defendants, except for the payment out of the Common Fund of notice and settlement administration expenses actually incurred and properly due and owing in connection with the Stipulation.

Without affecting the finality of this Final Approval Order in any way, this Court hereby retains continuing jurisdiction over (a) implementation and enforcement of any award or distribution from the Common Fund; (b) disposition of the Common Fund; (c) payment of taxes by the Common Fund, (d) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation, and (e) any other matters related to finalizing the Stipulation and distribution of the proceeds of the Common Fund.

### III.    PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES (Doc. 740).

Class Counsel moves for an award of attorneys' fees in the amount of 33% of the settlement pursuant to Federal Rules of Civil Procedure 23(h).  Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In the Stipulation and Agreement re: Final Approval Order and Judgment (Doc. 730), Defendants agreed to take no position on Class Counsel's fee and expenses request.  (Doc. 730 at 28).  This is typically referred to as a "clear sailing clause."  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth Headset Prods. Liab. Litig.v. Brennan*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citations omitted).  Further, Class members National Automatic Sprinkler Pension Fund and Sprinkler Industry Supplemental Pension Fund (collectively the "Sprinkler Fund") object to the Petition for Award of Attorneys' Fees.

The two primary objections asserted by the Sprinkler Fund are that the lodestar method of determining attorneys' fees, and not the percentage-of-fund method, is the appropriate way to determine attorneys' fees in this case and Class Counsel has not provided enough information to properly determine a lodestar calculation in this case. The Sprinkler Fund also argues that there are disparities in Class Counsel's attorneys' fees application, and as a result of these disparities, the Court should appoint a Special Master to resolve the attorneys' fees issue. In Response, Class Counsel argues that the percentage-of-fund method is clearly appropriate in this case, and that its attorneys' fees motion is appropriate and without any disparities. The Court will now discuss whether the requested attorneys' fees and expenses are fair and reasonable.

### A.      Lodestar vs. Percentage of Fund Methods

"In class action litigation, awards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct." *In re Lifelock, Inc. Mktg. and Sales Practices Litig.*, MDL No. 08-1977-MHM, 2010 WL 3715138, at *8 (D. Ariz. Aug. 31, 2010) (internal citation omitted). The Ninth Circuit Court of Appeals has approved two different methods for calculating reasonable attorneys' fees depending on the circumstances. *Bluetooth*, 654 F.3d at 941. The lodestar method is appropriate in class actions brought under fee-shifting statutes, where the relief obtained is primarily injunctive in nature and not easily monetized, and the legislature wants to compensate counsel for undertaking socially beneficially litigation. *Id.* In cases with a common fund settlement, the court has the discretion to apply the lodestar method or the percentage-of-recovery method. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," courts can award attorneys a percentage of the common fund "in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *Id.*

### 1.      The Lodestar Method

The lodestar figure is calculated by multiplying the number of

> hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors . . . Foremost among these considerations is the benefit achieved for the class.

*Id.* at 941-42 (internal citations omitted).  Rare and exceptional circumstances that can be taken into account for an enhancement of the lodestar figure are (1) when the hourly rate does not represent the attorneys' true market value (court can calculate by linking the attorneys' ability to the prevailing market rate), (2) when the litigation includes an extraordinary outlay of expenses and is exceptionally protracted (court can calculate by, for example, applying a standard rate of interest to the qualifying outlays and expenses), and (3) when there is an exceptional delay in the payment of fees (court can calculate by basing the award on current hourly rates or by adjusting the fee based on historical rates to reflect the present value).  *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 130 S.Ct. 1662, 1674-75 (2010).

### 2.    Percentage of the Fund Method

Applying the Percentage of the Fund Calculation Method, Courts calculate "25% of the fund as a 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942. When using the Percentage of the Fund Calculation Method, a Court can cross-check the fee amount with the lodestar amount to "confirm that percentage of recovery amount does not award counsel an exorbitant hourly rate." *Id.* at 945 (internal quotations omitted). "If the lodestar amount over-compensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *Id.* (internal quotations omitted).

A Court may apply a risk multiplier to the Percentage of the Fund Calculation in Common Fund Cases if it would be appropriate in that specific case.  Factors that the Ninth Circuit Court of Appeals has approved of in determining a risk multiplier include: (1) whether an exceptional result was achieved, (2) whether the case was extremely risky for

class counsel to pursue, (3) incidental or non-monetary benefits conferred by the litigation, and (4) the burdens faced by counsel in litigating the case, including an exceptional amount of time and money expended on a case and whether counsel gave up significant other work resulting in the decline of the firm's annual income. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).[1]

### i.   Analysis

Based on the Court's experience with this case, the seven years of history, and the unique and favorable settlement on behalf of Plaintiffs, the Court finds a fee award of 33.33% more than reasonable in this case. An upward departure from the 25% benchmark figure is warranted in this case because an exceptional result was achieved and it was extremely risky for Class Counsel to pursue this case through seven years of litigation. As

---

[1]   In its Response to the Petition for Attorneys' Fees, it appears that the Sprinkler Fund argues that applying risk multiplier factors in a common fund case in inappropriate in light of the United States Supreme Court's decision in *Perdue v. Kenny A. ex rel. Wynn*, __ U.S. __, 130 S.Ct. 1662 (2010). However, in *Perdue*, the Court did not address applying risk percentage factors in *common fund* cases, but merely discussed what factors are properly taken into account to enhance a fee award under the lodestar calculation when a fee award is made pursuant to federal fee-shifting statutes.

Further, the Ninth Circuit has specifically recognized that while it is not appropriate to apply risk percentage factors in statutory fee cases, the same concerns are not present in common fund cases. *See Vizcaino*, 290 F.3d at 1051 ("The bar against risk multipliers in statutory fee cases does not apply to common fund cases. Indeed, courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. In common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.") (internal quotations and citations omitted).

The reasoning in *Perdue* has not been extended to common fund cases, and Ninth Circuit precedent distinguishes between common fund cases and statutory fee cases. Further, Class Counsel point to two district court cases distinguishing *Perdue* from cases involving common fund settlements: *In re Vioxx Prods. Liab. Litig.*, 760 F.Supp.2d 640, 661 (E.D. La. 2010) and *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632 (N.D. Tex. 2010). Accordingly, *Perdue* does not prevent the Court from applying risk multiplier factors in common fund cases.

Class Counsel point out in their Petition for Attorneys' fees, since the enactment of the Private Securities Litigation Securities Reform Act ("PLSRA"), securities class actions rarely proceed to trial. Because Plaintiffs faced the burden of proving multiple factors relating to securities fraud, there was great risk that this case would not result in a favorable verdict after trial. Further, after the jury verdict, this Court granted judgment as a matter of law in favor of Defendants and Class Counsel pursued a risky and successful appeal to the Ninth Circuit Court of Appeals. Thereafter, Class Counsel successfully opposed a petition for certiorari to the United State Supreme Court. Based on this procedural history and the seven years of diligence in representing the Class, Class Counsel achieved an exceptional result for the Class. Such a result is unique in such securities cases and could not have been achieved without Class Counsel's willingness to pursue this risky case throughout trial and beyond.

Further, a Lodestar cross-check on the reasonableness of the figure also supports this Court's award. Class Counsel aver a total lodestar amount of $27,818,725.00[2] and seek a

---

[2] The Sprinkler Fund objects to the lodestar amount because (1) it is unsupported by an itemized statement of legal services rendered, (2) Class Counsel applied 2011 hourly rates to work done over seven years ago, and (3) Class Counsel seek to recover fees paid to contract attorneys. However, none of these objections prevent the Court from finding a reasonable attorneys' fees amount in this case. *See* 15 U.S.C. §1(a)(6) (The PLSRA provides that "[t]otal attorneys' fees and expenses shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). First, an itemized statement of legal services is not necessary for an appropriate lodestar cross-check. Further, it was appropriate for Lead Plaintiff's Counsel to apply 2011 hourly rates to its hourly calculations. *In re Washington Public Power Supply Sys. Sec.Litig,* 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court's use of current rates for attorneys still at the firm was not improper. . . . Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor. . . . the district court is, of course, free to use either current rates for attorneys of comparable ability and experience or historical rates coupled with a prime rate enhancement."). Finally, Class Counsel may recover fees paid to contract attorneys. Accordingly, the Court is unpersuaded by the Sprinkler Fund's contention that these issues with the lodestar calculation indicate that Class Counsel lacks credibility. Nor does the Court find that the attorneys' fees award should be reduced as a result of these issues.

Further, the Sprinkler Fund does not contest the amount of hours worked, but, rather, takes exception to the detail included for calculation of the lodestar amount. Because there

multiplier of 1.74 to that amount ($48,404,581.50).  The Ninth Circuit Court of Appeals has upheld a multiplier of 3.65 in a similar case.  *See Vizcaino*, 290 F.3d at 1047-1051 (where district court found that class counsel achieved exceptional results, the case was extremely risky for class counsel to pursue, non-monetary benefits were conferred on class, and counsel represented the class on a contingency basis that extended over eleven years, entailed hundreds of thousands of dollars of expenses, and required counsel to forgo significant other work that resulted in a decline in the firms' annual income, a 3.64 multiplier of lodestar figure was reasonable and well-within the range of multipliers applied in common fund cases).  Because, as discussed above, Plaintiffs' Lead Counsel achieved exceptional results for the Class and pursued the litigation despite great risk, a lodestar multiplier amount of 1.74 is reasonable.  *See id.* at 1051 (collecting cases and finding that multiples ranging from one and four are frequently awarded in common fund cases).  Accordingly, the lodestar cross-check confirms that a fee of 33.33% is more than reasonable in this case.

### 3.    Expenses

In addition to attorneys' fees, Class Counsel seeks expenses totaling $1,810,462.12. Pursuant to Federal Rule of Civil Procedure 23(h), a court may award reasonable ***nontaxable*** costs in a certified class action.  From the original Motion seeking attorneys' fees and costs, it appeared to the Court that Class Counsel did not distinguish between recovery of taxable and nontaxable costs.  The Clerk of the Court already awarded Plaintiffs taxable costs of $78,278.76 that they were entitled to when Judgment was entered after the successful appeal to the Ninth Circuit Court of Appeals.  (Doc. 715).  Because Rule 23(h) only allows the Court to award nontaxable costs, the Court ordered Class Counsel to supplement their Motion for Attorneys Fees noting that Class Counsel failed to "differentiate between taxable

is no dispute with regard to the amount of hours worked, this Court is capable of determining a reasonable hourly rate that should be applied to the various attorneys' work in this case. Further, although the Sprinkler Fund argues that a Special Master should be appointed to examine the underlying documentation supporting the lodestar amount, in this case, a Special Master could not duplicate this Court's experience with the totality of the litigation and, thus, this Court is in the best position to determine the reasonableness of any requested fees.

1   and nontaxable costs."  The Court ordered that the supplement solely address nontaxable
2   costs.

3       Rather than "solely addressing nontaxable costs" in their supplement, Class Counsel
4   informed the Court that it was seeking both taxable and nontaxable costs because, as part of
5   the settlement in this case, Plaintiffs released Defendants from their obligation to reimburse
6   the nontaxable costs pursuant to the Clerk's Judgment. (Doc. 761 at 1, n.1).  Class Counsel
7   does not cite to any authority that states that they are entitled to recover taxable costs because
8   Plaintiffs released Defendants from the obligation to pay such costs.

9       Further, in their supplement, rather than distinguishing between taxable and
10  nontaxable costs, Class Counsel cite to the same cases that they cited to in their original
11  Motion for Attorneys' Fees and Costs.  The cases cited by Class Counsel do not address
12  awards of nontaxable costs under Federal Rule of Civil Procedure 23(h).

13      For example, the first case that Class Counsel cite to in their Supplement is *Harris v.*
14  *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Class Counsel cite this case for the proposition
15  that they are entitled to recovery of all expenses that "would normally be charged to a fee
16  paying client." *Harris*, 24 F.3d at 20.  However, *Harris* has nothing to do with costs awarded
17  under Federal Rule of Civil Procedure 23(h).  Rather, the successful party in *Harris* was
18  entitled to attorneys fees and costs under 42 U.S.C.A. § 1988.  Further, in *Harris*, after the
19  Ninth Circuit Court of Appeals stated that "Harris may recover as part of the award of
20  attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying
21  client,' in the very next sentence, the Court stated "Thus reasonable expenses, *though greater*
22  *than taxable costs*, may be proper. *Id.* at 21 (emphasis added).  Accordingly, *Harris* does not
23  aid this Court in determining what nontaxable costs Class Counsel may be entitled to under
24  Federal Rule of Civil Procedure 23(h), but rather stands for the proposition that under 42
25  U.S.C.A. § 1988, the prevailing party may recover some non-taxable costs.  Likewise, the
26  other cases cited by Class Counsel likewise do not address the award of taxable costs under
27  Federal Rule of Civil Procedure 23(h).

28      Because Class Counsel have failed to address what non-taxable costs they have

incurred and continue to seek both taxable and non-taxable costs incurred throughout the entire litigation, despite this Court's Order to supplement the Motion for Attorneys' Fees and Costs solely to address *non-taxable* costs, the Court will not award any costs that might be classified as taxable costs.[3]   Accordingly, after deducting possible taxable costs from the requested costs, Class Counsel will be awarded $1,557,692.33 in costs.

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion for Attorneys' Fees (Doc. 740) is granted as follows:

This Court hereby awards Class Counsel attorneys' fees equal to 33.33% ($48,404,581.50) of the Common Fund, plus reimbursement of their out-of-pocket expenses in the amount of $1,557,692.33, with interest to accrue on the fees and expenses at the same rate and for the same periods as the Common Fund to the date of actual payment of said attorneys' fees and expenses to Class Counsel as provided in paragraph 12 of the Stipulation. The Court finds that the amount of attorneys' fees awarded herein to Class Counsel for Plaintiff and the Class to be fair and reasonable based on: the work performed and costs incurred by Class Counsel; the complexity of the case; the risks undertaken by Class Counsel and the contingent nature of their employment; the results achieved by Class Counsel including, inter alia, the January 16, 2008 Verdict, their successful handling of the appellate process in the Action, the securing of the April 6, 2011 Judgment and establishment of the Common Fund of One Hundred and Forty-five Million Dollars ($145,000,000.00); and the benefits achieved for Class Members through the Stipulation.  The Court also finds that the requested reimbursement of expenses is proper as the expenses incurred by Class Counsel, including the costs of experts, were reasonable and necessary in the prosecution of this Action on behalf of Class Members.

---

[3]   This includes: Clerk's Fees and Service Fees ($895.00 and $12,726.45), trial transcripts and depositions ($181,129.85), witness fees ($200.30), and exemplification and copies of papers ($55,066.02).  *See* 28 U.S.C. § 1920, 28 U.S.C. § 1821, and LRCiv 54.1(e).

All payments of attorneys' fees and reimbursement of expenses to Class Counsel in the Action shall be made from the Common Fund, and the Released Parties shall have no liability or responsibility for the payment of any of Class Counsels' attorneys' fees or expenses except as expressly provided in the Stipulation with respect to the cost of Notice and Administration.  Allocation of the fee award granted herein shall be made by Lead Counsel, Barrack, Rodos & Bacine to and among Class Counsel as it deems fair and in its sole discretion, based on the contributions and efforts made by Class Counsel appearing in the Action.

Any appellate review of the award to Class Counsel of attorneys' fees and/or reimbursement of expenses shall not disturb or affect the final approval of the Stipulation and each shall be considered separate for the purposes of appellate review of this Final Approval Order and Judgment.

## IV.    MOTION TO VACATE JUDGMENT

Defendants Apollo Group, Inc., Todd S. Nelson, and Kenda B. Gonzales move this Court to vacate the judgment entered by the Court on April 6, 2011 (Doc. 695) pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Although the Ninth Circuit Court of Appeals issued a mandate requiring the Court to enter the judgment that Defendants now seek to have vacated, "the district court may consider motions to vacate once the mandate has issued." *Gould v. Mutual Life Ins. Co.*, 790 F.2d 769, 772 (9th Cir. 1986); *see Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18-19 (1976).

Whether the Court may vacate a judgment because the parties have settled the case involves a balancing of the desire to encourage voluntary settlements and reduce appeals with the public interest in preserving the judgment to enhance judicial economy by allowing it to be used for issue preclusion purposes and in avoiding the possibility that repeat litigants effectively may control the development of the law by erasing unfavorable judgments.  The standard that applies to consideration of whether to vacate a judgment changes depending on the procedural posture of the case.  *See U.S. Bancorp Mortgage Co. v. Bonner Mall*

*P'ship*, 513 U.S. 18, 29 (1994) ("mootness by reason of settlement does not justify vacatur of a judgment under review" by a Court of Appeals unless exceptional circumstances are shown, but even in the absence of extraordinary circumstances, a district court may consider such a request pursuant to Federal Rule of Civil Procedure 60(b)). This case is unique because all appeals have been exhausted on the judgment, resulting from a jury verdict, that Defendant seeks to have vacated.

Rule 60(b) may be utilized to seek to vacate a judgment on the ground that the case has been settled so that it would not be equitable to have it remain in effect. This equitable determination is necessarily dependent on the facts of the specific case before the Court. In deciding whether to vacate the judgment, the Court must balance "the competing values of finality of judgment and right to relitigation of unreviewed disputes" and consider "the consequences and attendant hardships of dismissal or refusal to dismiss." *Bates v. Union Oil Co. of Calif.*, 944 F.2d 647, 650 (9th Cir. 1991); (internal citation omitted); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998) (internal citations omitted).

Here, vacating the judgment incorporating the jury's verdict was contemplated as a part of the settlement, was not a condition of the settlement, and "the Court should, where appropriate, support the negotiations and terms of settlement." *Click Entm't., Inc. v. JYP Entm't. Co., Ltd.*, No. 07-00342-ACK-KSC, 2009 WL 3030212, at *2 (D. Haw. Sept. 22, 2009) (citing *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988)). Although there would be no hardship in refusing to vacate the judgment, this policy of supporting the terms of settlement weighs slightly in favor of vacating the judgment. *Id.*

Further, concerns that are normally prevalent in considering whether to vacate a judgment, such as removing precedent from case law are not present here. The judgment, which represents the jury verdict, does not itself carry precedential value that would facilitate the resolution of disputes in future cases. Further, a vacated judgment still holds informational value and, here, the jury verdict has been incorporated as part of the settlement. Accordingly, the equities weigh slightly in favor of vacating the judgment in this case.

**IT IS ORDERED** that Defendants' Unopposed Motion to Vacate Judgment (Doc.

747) is granted.  The Clerk of the Court shall vacate this Court's Judgment of April 6, 2011 (Doc. 695).

## V.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting the Parties' Joint Motion for Final Approval of the Class Action Settlement and Entry of Final Judgment and Order of Dismissal. (Doc. 739).

**IT IS FURTHER ORDERED** granting Plaintiff's Stipulation and Agreement regarding Final Approval Order and Judgment (Doc. 730) as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Attorneys' Fees (Doc. 740) is granted as set forth herein.

**IT IS FINALLY ORDERED** that Defendants' Unopposed Motion to Vacate Judgment (Doc. 747) is granted.  The Clerk of the Court shall vacate this Court's Judgment of April 6, 2011 (Doc. 695).

DATED this 20th day of April, 2012.

_____
James A. Teilborg
United States District Judge

EXHIBIT A

HELEN L. BROYLES
302 LARKSPUR PLAZA DRIVE
LARKSPUR, CA 94939

ROBERT L. STODDARD
2928 ROYAL PALM DRIVE
COSTA MESA, CA 92626

ANNA THEOFILOPOULOU
14 STUYVESANT OVAL, APT 4H
NEW YORK, NY 10009

JOE L. REEVES
355 SCRUB OAK CIR
MONUMENT, CO 80132

FOREST A. BENSON
244 BALTIMORE PIKE, UNIT 235
GLEN MILLS, PA 19342

RB ARTHUR
810 WESTMINSTER DR
GREENSBORO, NC 27410

HELEN B. BROUGHTON
6402 TAM O'SHANTER LN
HOUSTON, TX 77036

DR. IMRAN S. QUAZI
46 HUMMER ROAD
EGHAM, SURREY, TW20 9BS, UK

CRAIG S. KIEFER, TRUSTEE
KIEFER FAMILY TRUST
1823 E. WESTCOTT CT
VISALIA, CA 93292

LEWIS SCHLOSSINGER
545 GLENCOE STREET
DENVER, CO 80220

EDWARD BURGARD
249 PORT DR, UNIT 6
KIMBERLING CITY, MO 65686

MAURICE VERALLI
2602 NORTH HAVEN DR
LONGVIEW, TX 75605

MARILYN D. LATUK
6260 PEARL ROAD #514
PARMA HEIGHTS, OH 44130

ALEX READ
5866 CALLISTER AVE
SACRAMENTO, CA 95819

JIM PANGBORN
8625 EAST GAIL ROAD
SCOTTSDALE, AZ 85260

A. VINCENT CIBRANO
THERESA CIBRANO
268 WHITMAN DRIVE
BROOKLYN, NY 11234

ROBERT T. COLLINS
16002 E BALSAM DR
FOUNTAIN HILLS, AZ 85268

JUDITH PETRERE
43271 OAKBROOK CT
CANTON, MI 48187

LLOYD BAERTSCH
11007 N STATE RD 77
HAYWARD, WI 54843

MANFREDO H. RODRIGUEZ
URB EL SENORIAL
2012 GARCIA LORCA
SAN JUAN, PR 00926

CRAIG M. JACOB
19011 SIOUX DR
SPRING LAKE, MI 49456

SHIRLEY W. WETZ
244 BRANDTSON AVE
ELYRIA, OH 44035

HERBERT E. MILLER
145 SOUTH STRATFORD DRIVE
ATHENS, GA 30605

FREDIANO V. BRACCO
CONNIE C. BRACCO
81 MCCOSH CIRCLE
PRINCETON, NJ 08540

RUBEN W. KILLIAN
MARY M. KILLIAN
1001 OAK HAVEN CIRCLE
COLLEGE STATION, TX 77840

KARL W. HONIGMAN
MARGARET A. HONIGMAN
3515 E. 2ND STREET
DULUTH, MN 55804

IFIN, LP-CC
JON KAYYEM
CLINICAL MICRO SENSORS
1137 PARK VIEW AVENUE
PASADENA, CA 91103

KAYYEM FAMILY TR
JON KAYYEM
CLINICAL MICRO SENSORS
1137 PARK VIEW AVENUE
PASADENA, CA 91103

RECTOR JOINT TRUST DTD 05/08/95
MARJORIE R. RECTOR, TTEE
4233 NORTH FLOWING WELLS #85
TUCSON, AZ 85705

PATRICK SUTLIFF
18437 NORTH 57TH DRIVE
GLENDALE, AZ 85308

JOSEPH EARL FERGUSON V (DECEASED)
JESSIE L. MCLAM, ADMINISTRATRIX
610 WILLIAMSBORO STREET
OXFORD, NC 27565

DONALD J BASCH
42 SEAWATCH TRAIL
WEBSTER, NY 14580

WALID SHEHEBER
MARWA SHEHEBER
PO BOX 224
ABU DHABI U.A.E.,

ETHEL P. VENABLE
JOHN R. VENABLE (DECEASED)
4312 S. 31ST ST #114
TEMPLE, TX 76502

CAROLYN G. CATTON
21 MARIN CT
MANHATTAN BEACH, CA 90266

ROBERT R. WADE IRRA
776 CO. RD #372
SANDIA, TX 78383

O'MELVENY & MYERS
C/O TRUST COMPANY OF THE WEST
1999 AVENUE OF THE STARS 7TH FLR
LOS ANGELES, CA 90067

LISA CLINE
MARK CRAWFORD & SCOTT CRAWFORD
1938 FORD RD
DELAWARE, OR 43015

DONALD S. JORDAN JR
142 RUSSELL DRIVE
WALNUT CREEK, CA 94598

DONNA SUE M. OLSON
JONATHAN N. OLSON
3309 N NEBRASKA STREET
CHANDLER, AZ 85225

CAROL L. SCHILLNE
DAVID R. SCHILLNE
14 THORNBIRD
ALISO VIEJO, CA 92656

IAN JAMIE
4 THE UPPER DRIVE
HOVE, EAST SUSSEX, BN3 6GN, UK

DANIEL B. MCFADDEN
379 GOLFYIEW COURT
MURFREESBORO, TN 37127